**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROMELL BROOM,** | : | **Case  No.  1:99 CV 0030** |
| | : | |
| **Petitioner,** | : | |
| | : | **JUDGE O'MALLEY** |
| **vs.** | : | |
| | : | |
| **BETTY MITCHELL, Warden,** | : | |
| | : | <u>**MEMORANDUM & ORDER**</u> |
| **Respondent.** | : | |

Before the Court is Romell Broom's ("Broom") Motion for Relief from Judgment Under

Rule 60(b).  (ECF No. 133.)  Also before the Court is Broom's Motion to Stay Execution

Currently Scheduled for September 15, 2009.  (ECF No. 132.)   Broom asks the Court to alter or

amend its August 28, 2002 decision.  In that decision, the Court held, among other things, that

Broom's *Brady v. Maryland*, 273 U.S. 283 (1963) claim was procedurally defaulted.  The

Warden ("Respondent") filed briefs in opposition to both Motions.  (ECF Nos. 136; 137.)

Broom thereafter filed a reply brief.  (ECF No. 138.)  For the following reasons, the Court

**DENIES** both Motions.

## I. RELEVANT PROCEDURAL HISTORY

### A. This Court's Previous Ruling on Broom's *Brady* Claim

On August 28, 2002, the Court issued its Memorandum of Opinion and Order denying

Broom's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Therein, the Court

found that Broom could not establish the "cause" necessary to excuse the procedural default of his *Brady* claim.[1]  The Court based its decisions on the state of the law as of the time Broom filed his petition for post-conviction relief in state court.

Broom filed his first petition for post-conviction relief in1990.  Some time in late 1993 or early 1994, Broom obtained documents from the East Cleveland Police Department ("ECPD") that he asserted supported a *Brady* claim.  He argued that he could not use these documents during his state post-conviction proceedings, however, because the Ohio Supreme Court's decision in *State ex rel. Steckman v. Jackson*, 639 N.E.2d 83 (Ohio 1994), prevented him from doing so.  Specifically, Broom argued that, in *Steckman*, the Ohio Supreme Court foreclosed the use of documents obtained through a public records request during post-conviction proceedings.  Because he was prohibited from using the ECPD reports in state court, Broom maintained, the federal habeas court was the first instance in which he could raise a *Brady* claim supported by them.

The Court rejected Broom's argument.  First, the Court pointed out that *Steckman* was not decided until September 7, 1994, while Broom's petition was already pending and apparently many months after his counsel had obtained the ECPD records at issue, giving him time to present those materials to the state court before any bar imposed by *Steckman* existed.  The Court went on to find, moreover, that, even if Broom could be excused for not having acted quickly enough to assert and support his *Brady* claim pre-*Steckman*, *Steckman* did not necessarily bar Broom's ability to use the ECPD documents as Broom claimed.  The Court observed, "[n]owhere

---

[1]     While this Court made many findings in its 137-page August 28, 2002 Opinion, it is only the Court's analysis of Broom's *Brady* claim, and the portion of the subsequent Sixth Circuit order affirming that decision,OH that is at issue here.

2

in the [*Steckman*] opinion did the Ohio Supreme Court discuss the effect, if any, this decision had on individuals already in possession of public records obtained through § 149.43."[2]  (ECF No. 113, at 45.)  This Court also cited to the Eighth District Court of Appeals' decision in *State v. Apanovitch*, 667 N.E.2d 1041 (Ohio Ct. App. 1995), where, in a post-*Steckman* decision, the Eighth District did, in fact, allow the use of documents obtained through a pre-*Steckman* public records request because both the petition for post-conviction relief and the public records request pre-dated *Steckman*.  *Id.* at 1051-52.

Based on the *Apanovitch* holding, the Court "suggest[ed] that Broom could have, in fact, used these public records in support of his 1990 post-conviction petition."  *Id.*  The Court concluded that, after *Apanovitch*, Broom and his counsel should have been aware of the possibility that he could have either amended his pending state post-conviction petition to include the earlier-obtained ECPD reports, or filed a successive petition asserting a *Brady* claim. *Id.*

The Court found Broom could not establish the "cause" necessary to excuse the procedural default.  It held:

> Broom not only filed his petition for post-conviction relief well before the decision in <u>Steckman</u>, but Broom also obtained a mandamus order for release of

---

[2]      Section 149.43(B)(1) of the Ohio Revised Code states:
> Subject to division (B)(4) of this section, all public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours.  Subject to division (B)(4) of this section, upon request, a public office or person responsible for public records shall make copies available at cost, within a reasonable period of time.  In order to facilitate broader access to public records, public offices shall maintain public records in a manner that they can be made available for inspection in accordance with this division.

the public records prior to the decision.  While the record is unclear as to when Broom received all of these public records, Broom's post-conviction counsel testified that the public records were obtained during 1993 and 1994.  Affidavit of Richard Vickers, (Doc. 29, ¶ 4(C)).  Thus, it appears that the vast majority of the relevant public records were received prior to the decision in <u>Steckman</u> on September 7, 1994.  And, despite <u>Steckman</u>, Broom eventually did obtain all these records.  Given the uncertain status of the law regarding public records obtained prior to <u>Steckman</u>, Broom could have filed a second post-conviction petition.  Even if, arguably, <u>Steckman</u> prevented Broom from filing a new post-conviction petition, Broom could have attempted instead to amend his post-conviction petition to include this alleged <u>Brady</u> material.  Ohio Rev. Code § 2953.21(F) (providing that the petitioner can amend his post-conviction petition at any time with leave of the court). The record, however, reveals no attempt by Broom to either file a second post-conviction petition or to amend his pending post-conviction petition, even though his post-conviction petition remained pending until 1997.

(ECF No. 113, at 45-6.)

Although the Court addressed the merits of the *Brady* claim in an alternative holding, it declined to speculate whether it would have granted the writ on this issue, calling it a "close question." *Id.* at 53.

### B. The Sixth Circuit Affirms The Court's Ruling

The Sixth Circuit affirmed this Court's decision.  *See Broom v. Mitchell*, 441 F.3d 392 (6th Cir. 2006).  In doing so, it observed that, while Broom received most of the ECPD documents well before the *Steckman* holding, it appeared, based on counsel's representations at oral argument, that he may have received the 19 documents relevant to his *Brady* claim only a few months prior to *Steckman*. *Id.* at 402.  While the Sixth Circuit conceded that, perhaps, Broom should not be penalized for failing to file a pre-*Steckman* petition based on these documents, it adopted this Court's reasoning regarding Broom's ability to try to use those documents post- *Steckman*.  It held that:

*Steckman* may not bar the use of records already in the petitioner's possession. Rather, *Steckman* may only bar efforts to obtain new information pursuant to the public-records statute during post-conviction proceedings.  Because *Steckman* does not directly address this issue, there was a reasonably available "legal basis" for Broom either to file another petition for postconviction relief or to amend the petition that he had already filed.

*Id.* at 403-04.

## C. Successive Post-Conviction Petition

## 1. The Post-Conviction Court

Broom filed a successive petition for state post-conviction relief in 2007.  There, for the first time in state court, he asserted the *Brady* claim that he had attempted to raise in the federal habeas corpus proceedings.  The state trial court dismissed the petition after it concluded that Broom did not prove that he was "unavoidably prevented" from raising this issue in the first post-conviction petition.[3]   *State v. Broom*, No. CR 196643, slip op. (Ohio Ct. Common Pleas

---

[3]     Pursuant to Ohio Revised Code § 2953.23(A)(1)(a)-(b), a petitioner may only proceed with a successor post-conviction petition if he or she demonstrates:
            * * *
(1) Both of the following . . . :
            (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
            (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

5

Mar. 17, 2008).  The trial court agreed with and expressly relied upon the Sixth Circuit's *Steckman* analysis and concluded that Broom had a legally available avenue open to him, even post-*Steckman*, to raise his *Brady* claim in state court, but did not do so.  The court did not reach the second prong of the successive post-conviction statute.  Thus, it did not address whether a reasonable factfinder would have found Broom guilty of the underlying offense absent the alleged constitutional error.

### 2. The Eighth District Court of Appeals

On appeal, the Eighth District reversed the post-conviction court.  The Eighth District reasoned that *Steckman* at least implied that Broom could not have included the ECPD reports in his first post-conviction petition and that confusion regarding the scope of *Steckman* "unavoidably prevented" Broom from raising the *Brady* issue previously.  *State v. Broom*, 2009-Ohio-3731, Cuyahoga App. No. 91297, 2009 WL 2263824, ¶ 18 (Ohio Ct. App. July 30, 2009).  The Eighth District expressly disagreed with the Sixth Circuit's conclusion that any ambiguity in the state of the law once *Steckman* was decided meant that Broom did, in fact, have an avenue available for him to present his *Brady* claim to state court.  Instead, the Eighth District found that it was this very ambiguity that *prevented* Broom from acting more diligently.  *Id.*

The Eighth District further opined that the Sixth Circuit's and this Court's reliance on *Apanovitch* was unfounded.  It indicated that any remarks the Eighth District made in that opinion regarding the *Steckman* holding were dicta.  The Eighth District concluded that post-*Steckman* law did not become "unsettled" until 2003, after it issued its opinion in *State v. Larkins*, No. 82325, 2003-Ohio-5928, 2003 WL 22510579 (Ohio Ct. App. Nov. 6, 2003), finding that *Steckman* did *not* bar use of records obtained from sources other than a post-*Steckman* public

records request.[4]  At that juncture, the Eighth District observed, Broom was well underway in his federal habeas proceedings.  The Eighth District therefore concluded that Broom's 2007 successor post-conviction petition represented the first opportunity for Broom to present his *Brady* claim in state court.  It remanded the case to the post-conviction court to determine if Broom could prove the second prong of the successive post-conviction statute.

### 3. The Ohio Supreme Court

On September 11, 2009, the Ohio Supreme Court reversed the Eighth District's decision. *State v. Broom*, Slip Op. No. 2009-Ohio-4778, at ¶ 21.  The Ohio Supreme Court found that, while it was unclear *exactly* when Broom actually received the public record documents, it was clear that he had them before *Steckman* was decided.  It then noted that Broom "utterly fail[ed] to explain why he made no effort to use them before *Steckman* was decided," and concluded that Broom was not "unavoidably delayed" in raising his *Brady* claim previously because he could have sought to use the ECPD records as soon as he obtained them.

The Ohio Supreme Court then proceeded to consider the Eighth District's conclusion that, once decided, *Steckman* became a bar to Broom's continued reliance on the ECPD records. It found the Eighth District Court of Appeals' analysis "unpersuasive," and concluded, as this

---

[4]      In *Larkins*, the Eighth District indicated that "neither *Steckman*, nor its companion cases, provide an 'exclusionary rule' for information obtained by lawful request - even if, as the State contends, it was not required to provide same under the law." *State v. Larkins*, 2003-Ohio-5928, Cuyahoga App. No. 82325, ¶ 17.  The Eighth District noted that *Steckman* addressed the "narrow issue of mandamus and whether there was a clear legal duty to produce certain records pursuant to R.C. 149.43, when the same documents had never been provided through discovery in the underlying criminal case." *Id.* at ¶ 16.  The *Larkins* court ultimately concluded that *Steckman* was inapplicable to the factual scenario at hand because Larkins had lawfully obtained the police records from a third party. *Id.* at ¶ 18.

7

Court and the Sixth Circuit had, that *Steckman* did not directly address petitioners, like Broom, who already had obtained the public records before *Steckman* was decided. *Id.* at ¶ 15.

The Ohio Supreme Court's ruling was precisely what this Court and the Sixth Circuit had predicted.  It specifically found the Eighth District Court of Appeals' opinion unpersuasive and held: "To begin with, we agree with the Sixth Circuit that *Steckman* 'does not directly address' the question of whether public records, acquired by a defendant before the filing of his postconviction petition, may be used as evidentiary support for the legal claims asserted by that petition." *Id.* at ¶ 15 (citing *Broom v. Mitchell*, 441 F.3d 392, 403 (6th Cir. 2006)).  The Ohio Supreme Court found that, rather than decide the issue of whether a petitioner who already had obtained public records could use those records, *Steckman* confined its holding to the question of whether petitioners could avail themselves of the public records act in support of a post-conviction filing, *i.e.* to the question presented in that case.  *Id.* at  ¶ 17.

The Ohio Supreme Court found that *Steckman* did *not* prohibit Broom from using his previously obtained public records. *Id.* at  ¶ 18.  In its concluding paragraph, the Ohio Supreme Court specifically overruled the Eighth District Court of Appeals, stating:

> In sum, we hold that the court of appeals applied a narrow reading to *Steckman* *that was not applicable to Broom's claims*.  The trial court correctly determined that Broom could have attempted to raise his *Brady* claim in his initial postconviction petition and that Broom therefore failed to show that he was "unavoidably prevented" from doing so.  R.C. 2953.23(A)(1).

*Id.* at ¶ 21 (emphasis added).

The Ohio Supreme Court further held that, even if Broom were successful on the first prong of § 2953.23, he would nonetheless be unable to satisfy the second requirement for filing a successive post-conviction petition.  Quoting this Court's prior decision, the Ohio Supreme

Court found that much of Broom's proffered *Brady* material was inadmissible hearsay, consisting mainly of "conjecture and rumor." *Id.* at ¶ 20.  (quoting *Broom v. Mitchell*, 99-CV-0030, at 42 (N.D. Ohio Aug. 28, 2002)).  Because this evidence may only have helped Broom peripherally as impeachment evidence, the Ohio Supreme Court held that Broom could not establish that "no reasonable factfinder would have found him guilty" had the *Brady* material been available for trial.  *Id.*

## II. RULE 60(b) MOTION

In his Rule 60(b) Motion, Broom asks the Court to set aside its previous finding that *Steckman* did not prevent him from presenting a *Brady* claim at his first post-conviction proceeding based on the ECPD reports.[5]  He claims that this Court can grant him relief despite the Ohio Supreme Court's finding that this Court (and the Sixth Circuit) correctly decided the impact of *Steckman*.  He asserts specifically that he is entitled to relief under Rule 60(b)(6), which provides litigants with relief from a judgment under "extraordinary circumstances." Fed.R.Civ. P. 60(b).  The Court will not analyze Broom's assertions under Rule 60(b)(6). Rather, it finds that it is foreclosed from reviewing them because of the findings of the Ohio Supreme Court and the earlier Sixth Circuit decision in this case.

Broom asserts that this Court may disregard the Ohio Supreme Court's decision on two grounds: First, he claims that the Ohio Supreme Court's ruling merely instructs that Broom could have attempted to use the ECPD records in and after 1994, and does not address whether he

---

[5]    As an initial matter, Broom asserts that his Rule 60(b) Motion is not the practical equivalent to a successor federal habeas petition under 28 U.S.C. § 2244(b) and *Gonzalez v. Crosby*, 545 U.S. 524 (2005).  Because the Court finds no merit to Broom's Rule 60(b) Motion, it does not address this issue.

would have been permitted to do so. He argues that the Ohio Supreme Court did not decide whether *Steckman* would have prevented him from amending his first post-conviction petition or prevented him from filing a successive petition after obtaining the ECPD documents. Second, Broom asserts that the Ohio Supreme Court's decision did not turn on an adequate and independent state ground on which this Court can rely. The Court finds neither argument persuasive, as is discussed below.

**A. The Ohio Supreme Court Specifically Reversed The Eighth District Court of Appeal's Holding**

Broom contends that the Ohio Supreme Court's decision rested on such narrow grounds that portions of the Eighth District Court of Appeals' decision remain intact. Specifically, he argues that the Eighth District's holding that *Steckman* would have precluded Broom from utilizing the ECPD documents in his first post-conviction proceeding was left untouched by the Ohio Supreme Court's opinion. He argues, accordingly, that it provides a basis to alter this Court's prior findings. Because the Ohio Supreme Court's decision merely speaks to what Broom could have *sought* to do, rather than what the law would have authorized him to do, Broom claims it did not overrule the Eighth District's finding concerning *Steckman's* implications.

The Court disagrees with Broom's interpretation of the Ohio Supreme Court's opinion. First, as the Ohio Supreme Court and this Court have found, Broom does not explain why he never filed a *Brady* claim *prior* to the *Steckman* decision. Although the Sixth Circuit noted that Broom's counsel may have procured some of the documents supporting the *Brady* claim a mere few months prior to *Steckman*, as the Ohio Supreme Court observed, that finding does not

10

entirely excuse Broom's utter failure to act.

Moreover, Broom ignores those portions of the Ohio Supreme Court's opinion expressly overruling the Eighth District Court of Appeals.  After describing the Eighth District's holding, the Ohio Supreme Court said, "[w]e find the Court of Appeals analysis unpersuasive."  *State v. Broom*, 2009-Ohio-4778, at ¶ 15.  The court then held that, "The language of *Steckman*'s syllabus 'must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the Court."  *Id.* at ¶ 16 (citations omitted).  Taking this language in conjunction with the description of *Steckman*'s syllabus at paragraph four of the Supreme Court's opinion in this case, it is clear that the Ohio Supreme Court believes *Steckman* was confined to the circumstances presented there, and only those circumstances – where a defendant attempts to use R.C. 149.43 to *obtain* records for use in a post-conviction proceeding.[6] Finally, the Ohio Supreme Court's ultimate holding confirms that it does not believe Broom's circumstances were governed by *Steckman*.  Thus, the court clearly states,  "we hold that the court of appeals applied a narrow reading to *Steckman* that was not applicable to Broom's claims. The trial court correctly determined that Broom could have attempted to raise his *Brady* claim in his initial postconviction petition . . ."  *Id.*  at  ¶ 21.

The Ohio Supreme Court held, as did this Court and the Sixth Circuit before it, that the

_____

[6]        This interpretation of *Steckman* is logical given that the *Steckman* decision turned on an interpretation of the Ohio Public Records Act.  Under this Act, there is an exception to the disclosure of public records for law enforcement records under the work product doctrine. *See* Ohio Rev. Code § 149.43(A)(1)(h)(stating "'Public record' does not mean . . . (h) Confidential law enforcement investigatory records.").  Thus, as *Larkins* explains, *Steckman* is not an exclusionary rule prohibiting post-conviction petitioners from utilizing documents lawfully obtained, but an analysis of what is obtainable under the Public Records Act.

*Steckman* holding did not apply to Broom.  *Steckman* stood only for the proposition that a post-conviction petitioner could no longer *obtain* public records to utilize in that proceeding, not that a petitioner could no longer *use* documents already in his or her possession or which come into his or her possession from some other source.  The Ohio Supreme Court ruled precisely as this Court and the Sixth Circuit predicted: Broom could have utilized the ECPD documents both before and after the *Steckman* decision.

Finally, it is important to note that the Ohio Supreme Court had an alternative finding. Putting *Steckman* aside, the court ruled that Broom could not meet the second prong of the post-conviction statute.  Thus, this Court's analysis of *Steckman* is largely academic because, even if the Court somehow found that the Ohio Supreme Court wrongly decided *Steckman*, the Ohio Supreme Court's finding that Broom cannot establish that no reasonable factfinder would have found him guilty absent constitutional error is fatal to his claim.  The Eighth District Court of Appeals declined to reach this prong of the successive post-conviction statute, instead remanding the case to the trial court to reach a decision on this issue; the Ohio Supreme Court did not hesitate to do so, however.

**B. The Ohio Supreme Court Decision Is Based On Appropriate State Court Grounds**

Broom next contends that the Ohio Supreme Court's decision was not based on an adequate and independent state law ground.  He therefore concludes that this Court need not defer to the Ohio Supreme Court's holding under the procedural default doctrine.

In general, a federal court may not consider "contentions of general law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  If a

12

> state prisoner has defaulted his federal claims in state court pursuant to an
> independent and adequate state procedural rule, federal habeas review of the
> claims is barred unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate
> that failure to consider the claims will result in a fundamental miscarriage of
> justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To be independent, a state procedural rule and

the state courts' application of it "must rely in no part on federal law." *Fautenberry v. Mitchell*,

No. C-1-00-332, 2001 WL 1763438, at * 24 (S.D. Ohio Dec. 26, 2001)(citing *Coleman*, 501 U.S.

at 732-733). To be adequate, a state procedural rule must be "firmly established and regularly

followed" by the state courts at the time it was applied. *Ford v. Georgia*, 498 U.S. 411, 423-24

(1991); *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001).

Broom argues that the Ohio Supreme Court's opinion is not based entirely on state law

because it addresses the merits of his *Brady* claim. He therefore asserts that this Court may

disregard the procedural bar and likewise address the merits of that claim.

Once again, Broom's reading of the Ohio Supreme Court's opinion is inaccurate. The

Ohio Supreme Court did not reach the merits of the claim, but merely examined the second prong

of Ohio's successive post-conviction statute. While it is true that the language in Ohio Revised

Code § 2953.23(A)(1)(b) mirrors the federal habeas standard for an evidentiary hearing,[7] that

similarity is beside the point. Any review of the facts proffered in support of Broom's *Brady*

claim clearly was in the context of determining whether Broom could proceed with his

---

[7]    The standard for an evidentiary hearing in a federal habeas corpus action requires
a petitioner to demonstrate that: "the facts underlying the claim would be
sufficient to establish by clear and convincing evidence that but for constitutional
error, no reasonable factfinder would have found the applicant guilty of the
underlying offense." 28 U.S.C. § 2254(e)(2).

successive post-conviction petition.  *See State v. Broom*, slip op., at ¶ 19 ("As a final matter, we are not persuaded that Broom can meet the second requirement in R.C. 2953.23(A)(1) for filing a successive postconviction petition.").

It is true that the Ohio Supreme Court acknowledged that the federal habeas standard and R.C. 2953 are similar and, accordingly, that the Ohio Supreme Court employed a standard similar to the one that this Court originally employed.  This similarity, however, does not alter the fact that the Ohio Supreme Court reviewed Broom's petition only for the purpose of deciding whether Broom could meet the *state*'s successive petition statute; their reasoning simply does not impact federal law.  Rather, the Ohio Supreme Court: (1) discussed the implications of *Steckman*; and (2) determined that Broom could not meet the second prong of R.C. § 2953.23.[8] Accordingly, Broom's assertions to the contrary are without merit.

### C. Conclusion

The Court finds that it is bound by the Ohio Supreme Court's decision holding that *Steckman* would not have prevented Broom from amending his first post-conviction petition or filing a successive petition using the ECPD documents to support his *Brady* claim.  This Court is also bound by the Ohio Supreme Court's conclusion that Broom can not demonstrate, by clear

---

[8]        As this Court noted in its prior decision, the records at issue, taken in the light most favorable to Broom, contained witness statements variously indicating: (1) a belief among some who had seen the three girls on the night of the kidnapping that the girls were under the influence of drugs, or perhaps, alcohol; (2) a belief that the three girls had, in the past, solicited or accepted rides from strangers; and (3) that there was some evidence that the victim was sexually active and, in fact, may have been sexually active within a day or two of the murder.
        The Court balanced these records against the "profound" evidence tying Broom to the Tryna Middleton murder – including eyewitness identification and clear DNA results and concluded, like the Ohio Supreme Court, that Broom had failed to establish that "no reasonable jury would have convicted him."

and convincing evidence, that no reasonable factfinder would have found him guilty absent the constitutional error under § 2953.23(A)(1)(b).  Because the Ohio Supreme Court found Broom could not satisfy the second prong of the successive post-conviction statute, Broom's arguments regarding the applicability of *Steckman* to his case are academic.

The Ohio Supreme Court's decision is based, moreover, on an adequate and independent state successive post-conviction statute.  A federal habeas court must defer to a state court's interpretation of its own law.  *Miskel v. Karnes*, 397 F.3d 446, 452-53 (6th Cir. 2005).

Both of the Ohio Supreme Court's conclusions are precisely what this Court and the Sixth Circuit Court of Appeals predicted.  Given that the Ohio Supreme Court confirmed this Court's interpretation of the law, and the Sixth Circuit's affirmance of that interpretation, the Court will not reconsider the issues raised in Broom's Rule 60(b) Motion.  Accordingly, the Motion is **DENIED**.

### III. MOTION FOR STAY OF EXECUTION

Broom also filed a Motion for Stay of Execution.  (ECF No. 132.)  The Respondent opposed the Motion.  (ECF No. 137.)   Based on the Court's finding that Broom's Rule 60(b) Motion has no merit, it holds that Broom is not entitled to a stay.  *Amoco Productions Co. v. Village of Gambell*, 480 U.S. 531, 546 (1987).  The Motion for Stay of Execution is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Broom's Motion for Relief from Judgment Under Rule 60(b)

is **DENIED**.  (ECF No. 133.)  Additionally, Broom's Motion to Stay Execution Currently

Scheduled for September 15, 2009 is **DENIED**.  (ECF No. 132.)

**IT IS SO ORDERED**


**s/ Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

September 14, 2009

16